# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE  DIVISION

| | | |
|---|---|---|
| **CLIVE F. WILSON** | : | **DOCKET NO. 2:08-1646**<br>**Section P** |
| **VS.** | : | **JUDGE MELANCON** |
| **MICHAEL MUKASEY, ET AL.** | : | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed by *pro se* petitioner, Clive F. Wilson, pursuant to 28 U.S.C. § 2241. [rec. docs. 1 and 10]. The government has filed an Answer and a Return to the Petition [rec. doc. 9], as well as a Supplemental Memorandum of Law [rec. doc. 24], to which petitioner has filed a Reply [rec. doc. 12] and Supplemental Reply [rec. doc. 26].  An evidentiary hearing was held on November 3, 2009, and the case was taken under advisement.  This matter has been referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

For the reasons which follow, **IT IS RECOMMENDED** that this *habeas corpus* action be **DENIED AND DISMISSED**.

## FACTUAL BACKGROUND

The procedural history of this case is complex.  Petitioner was convicted in New York for a state controlled substance offense and a state firearms offense in 1989.  These

convictions have not been reversed, overturned or otherwise declared invalid.[1]  As a result of his state court criminal convictions, an order to show cause was issued on March 18, 1993. [rec. doc. 9-3, Government Exhibit 3]. On March 23, 1993, petitioner was released from custody on bond. [*Id*., at Government Exhibit 4-6].

Petitioner was ordered deported to Jamaica by a  New York immigration judge on July 30, 1993, presumably on the grounds contained in the order to show cause.  [*Id*., at Government Exhibit 8].  Although the petitioner apparently denied that he was deportable, the immigration judge filed no written reasons for his conclusion that petitioner was deportable as charged.

Petitioner's case was remanded to the immigration court on December 12, 1995 by the Board of Immigration Appeals to allow petitioner to seek relief under § 212(c).  [*Id*., at Government Exhibit 10]. In remanding petitioner's case, the BIA did not reach petitioner's claims that the immigration judge erred in finding  petitioner was deportable as charged.

In 1996, while petitioner remained free on bond, petitioner was charged with a federal criminal controlled substance offense, to wit, conspiracy to possess with intent to distribute cocaine, for which he was convicted and sentenced on January 8, 1998 to serve 108 months imprisonment.  *See United States v. French, et al*, 96-cr-06208 (S.D. Fla.

---

[1]Petitioner recently filed a Motion in the New York state court seeking to dismiss his indictment and to vacate or withdraw his guilty plea. [rec. doc. 24-2, pgs. 8-15].  There is no evidence before this court that the New York court granted petitioner's requested relief.

2

1996), *appeal dismissed*, No. 98-4115 (11th Cir. 1/29/1999).  Accordingly, on August 4, 1998, petitioner's case was administratively closed while petitioner served his federal sentence. [rec. doc. 9-3, Government Exhibit 13].

Petitioner's immigration proceedings were re-opened in Louisiana.  [*Id.*, at Government Exhibit 15].  On August 12, 2005, petitioner's request for § 212(c) relief was denied by a Louisiana immigration judge on grounds that petitioner's 1998 federal controlled substance conviction rendered him ineligible for § 212(c) relief and that, accordingly, he was unable to adjust petitioner's status under § 245 of the Act.  The immigration judge also ordered petitioner deported to Jamaica based on the New York charges contained in the order to show cause.  In rendering her decision, the immigration judge cited portions of the administrative record indicating that at his 1993 deportation hearing, petitioner's state court conviction records had been entered into evidence as had petitioner' immigrant visa face sheet in support of the grounds subjecting petitioner to deportation.[*Id.*, at Government Exhibit 16 and 17].

Petitioner was released from federal criminal custody on November 9, 2005 and transferred into the custody of DHS/ICE.  [*Id.*, at Government Exhibit 19-20].

On December 28, 2005, the BIA dismissed petitioner's appeal of the August 12, 2005 immigration judge's ruling.  [*Id.*, at Government Exhibit 21].  Thereafter, petitioner filed various unsuccessful appeals to the BIA.  Petitioner's motion to reconsider and motion to reopen were denied on April 27, 2006 and November 29, 2007, respectively.

[*Id*., at Government Exhibit 27 and 32].  On January 31, 2008, the BIA granted petitioner's motion to reconsider, reinstated petitioner's motion to reopen and then denied the motion finding that venue was properly changed from New York to Louisiana whether or not the court considered petitioner's opposition. [*Id*., at Government Exhibit 33].

Petitioner filed two petitions for review in the United States Second Circuit Court of Appeal[2], which granted temporary stays of deportation requested by petitioner.  *See Wilson v. Gonzalez,* 06-0208 (2nd Cir. 2006); *Wilson v. Mukasey*, 08-0004 (2nd Cir. 2008).  Petitioner also filed a petition for review in the United States Fifth Circuit Court of Appeal.[3]  *See Wilson v. Mukasey*, 07-60975 (5th Cir. 2007).  The Second Circuit transferred both of petitioner's cases to the United States Fifth Circuit Court of Appeal because the petitions had been filed in a court of improper venue.

On May 6, 2008, the Fifth Circuit granted the department's motion to remand petitioner's case to the BIA, based on the fact that the BIA had never ruled on the issue of petitioner's deportability, an issue raised in petitioner's original appeal, and because the administrative record did not contain the record of petitioner's state court convictions which had been admitted as an exhibit during petitioner's 1993 deportation hearing. *See Wilson v. Mukasey*, No. 07-60870 (5th Cir. 2007) and Motion to Remand filed therein.

---

[2]Petitioner apparently sought review of the BIA's December 28, 2005 decision dismissing petitioner's appeal.  Deportation Officer Jeannine B. Fruge testified that the first such petition was filed in the Second Circuit in January, 2006 and that the second petition was filed in the Second Circuit in January, 2008.  *See* Second Circuit docket numbers 06-0208  (filed separately under Fifth Circuit docket number 07-60870) and 08-0004 (filed under pending Fifth Circuit docket number 07-60975) and also filed separately under Fifth Circuit docket number 08-60218.

[3]Petitioner apparently sought review of the BIA's decision on his motion to reopen.

Deportation Officer Jeannine B. Fruge testified that after the BIA dismissed his appeal in December, 2005, in April 2006, a travel document was obtained to effect petitioner's deportation. [*See also* rec. doc. 9-4, Government Exhibit 31, at pg. 19]. However, as a result of all of the motions and appeals filed by petitioner, as well as the stays of deportation obtained by petitioner in connection with these appeals, the department was not able to deport petitioner.  She likewise acknowledged that petitioner's deportation has not been effected to date because every time there has been a "brief little window of opportunity", petitioner has filed for another stay or an appeal.

On October 9, 2008, the BIA remanded the case to the immigration judge in Oakdale, Louisiana "to conduct further proceedings, as are deemed appropriate, and the entry of a new decision." [rec. doc. 1, pg. 54-56, Petitioner's Exhibit 11].  Prior to entry of the BIA's October 9, 2008 Order, the department had filed a Motion to Remand based on the fact that petitioner had never been charged as deportable as a result of his federal criminal controlled substance conviction, and, accordingly, requested remand so that the department would have an opportunity to charge him with this ground as well. [*Id.,* at pg. 50-52, Petitioner's Exhibit 10].  The record contains no decision on this motion.

Petitioner's Motion to Reconsider was denied by the BIA on December 22, 2008, and the case was again remanded to the immigration court for proceedings consistent with its prior October 9, 2008 ruling. [rec. doc. 10-2, pg. 36].

After entry of the BIA's December 22, 2008 ruling, the department filed its response to the petitioner's Motion to Reconsider, in which it again indicated that because petitioner had never been charged as deportable as a result of his federal criminal controlled substance conviction, the case should be remanded so that the department could have the opportunity to charge him with that additional ground for deportation. [rec. doc. 10-2, pg. 38-40].

Petitioner filed a Motion in this court seeking an injunction to prevent the department from filing an additional charge in support of deportation based on his 1998 federal conviction.  Following the issuance of a Report and Recommendation by the undersigned, on February 20, 2009 Judge Melancon denied petitioner's Motion. [rec. docs. 13, 15 and 19].

Thereafter, the department filed an additional charge of deportability against petitioner based on his January 12, 1998 federal conviction for conspiracy to possess with intent to distribute cocaine, alleging petitioner was subject to deportation as an aggravated felon pursuant to former section § 241(a)(2)(A)(iii).  [rec. doc. 24-2, Government Exhibit 40].  Petitioner's Motion to Terminate his deportation proceeding based on an alleged improper change of venue was denied by the immigration judge on February 26, 2009, the court finding that the change of venue from New York to Louisiana was proper, given that petitioner was incarcerated in Louisiana.  [*Id*., at Government Exhibit 41].

6

On June 19, 2009, petitioner was ordered deported to Jamaica on the basis of both state court convictions alleged in the original Order to Show Cause and the 1998 federal criminal conviction alleged in the form I-261, an offense which the immigration judge found constituted an aggravated felony. [rec. doc. 25-2, pg. 31-33 and 36; rec. doc. 24-4, Government Exhibit 43]. Petitioner's application for a § 212(c) waiver was for lack of statutory eligibility for relief, and his requests for termination and cancellation of removal pursuant to § 240A(a)(1) were denied. [rec. doc. 25-2, pg. 33-36; rec. doc. 24-4 Government Exhibit 43].

Petitioner's appeal of the June 19, 2009 Order of deportation was dismissed by the BIA on October 13, 2009. [rec. doc. 32-4, Government Exhibit 46]. In dismissing his appeal, the BIA rejected petitioner's claim of *res judicata* because there had never been a final judgment issued in his case and found, like this court, that on remand the department had authority to issue the additional charge against petitioner based on his federal criminal conviction. [*Id*.].

On October 16, 2009, petitioner filed a Petition for Review and a Motion for Stay of Deportation in the United States Ninth Circuit Court of Appeal, which pursuant to its standing general orders (G.O. 6.4(c)(1)(3)), granted a temporary stay of deportation pending review. *Wilson v. Holder*, 09-73313 (9th Cir. 2009).

At the evidentiary hearing, petitioner acknowledged in open court, and while under oath, that the Petition for Review he filed in the United States Court of Appeals for the

Ninth Circuit, under docket number 09-73313, was filed in a court of improper venue. *See* 8 U.S.C. § 1251(b)(2).  He asserted that the pleading had been filed in error by another detainee who had helped him prepare the Petition.  Accordingly, petitioner acknowledged that he intended to withdraw that Petition for Review, in order to proceed with judicial review in the United States Court of Appeals for the Fifth Circuit, the court of appeals for the judicial circuit in which the Oakdale, Louisiana immigration judge completed petitioner's immigration proceedings.  The undersigned informed petitioner that the court would contact the Ninth Circuit to advise of the erroneous filing of this Petition for Review.

Apparently right after the evidentiary hearing, on November 3, 2009, petitioner faxed a letter to the Ninth Circuit advising that Court that he did not wish to have his Petition and stay of deportation withdrawn.  *Wilson v. Holder*, 09-73313 (9th Cir. 2009), rec. doc. 3.  This fax was followed by written correspondence, filed by the Ninth Circuit on November 9, 2009, indicating his clear intent that the Petition and stay remain in the Ninth Circuit. *Id*. at rec. doc. 9.  Because venue was not proper in the Ninth Circuit, on December 11, 2009, the Ninth Circuit transferred petitioner's case to the United States Fifth Circuit Court of Appeal, the court of proper venue, instructing that the temporary stay of deportation remain in effect until the Fifth Circuit resolved the pending Motion. *Id.* at rec. doc. 6.

8

On November 6, 2009, petitioner filed a Petition for Review and a Motion for Stay of Deportation in the United States Fifth Circuit Court of Appeal. *Wilson v. Holder*, 09-60840 (5th Cir. 2009).  On December 15, 2009, the Petition for Review transferred from the Ninth Circuit was docketed in this case.  *Id.*  On December 17, 2009, the Fifth Circuit denied petitioner's Motion for Stay of deportation.  *Id.*  The Petition for Review remains pending before the Fifth Circuit.

 On December 28, 2009, petitioner filed another Petition for Review and another Motion for Stay of Deportation in the United States Ninth Circuit Court of Appeal which, again pursuant to its standing general orders (G.O. 6.4(c)(1)(3)), granted a temporary stay of deportation pending review.  *Wilson v. Holder*, 09-74081 (9th Cir. 2009).  That Petition remains pending in the Ninth Circuit.

The Fifth Circuit's docket reveals that petitioner has recently filed another proceeding in that court.  However, that case is sealed and therefore the nature of the proceeding is not clear.  *Wilson v. Holder*, 09-60927 (5th Cir. 2009).

Petitioner sets forth a single claim for relief herein, "prolonging detention & violation of Fifth Amendment Rights." [rec. doc. 1, p. 12, ¶ 2(h)].  Petitioner complains that his prolonged detention during pre-final order deportation proceedings is unconstitutional.  More specifically, petitioner asserts that the mandatory detention provision,  § 1226(c), does not apply to him, and further that the provision, as interpreted by the United States Supreme Court, authorizes such detention for a relatively short

period of time, and that the delay in this case exceeds that limitation.  Accordingly, he requests that this court grant him *habeas corpus* relief directing his immediate release from custody.

## LAW AND ANALYSIS

Initially, the undersigned notes that this court has subject matter jurisdiction over petitioner's challenge to his the constitutionality of his pre-final deportation order detention.  *See Demore v. Kim*, 538 U.S. 510, 517-18, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (analyzing challenge to mandatory detention under 8 U.S.C. § 1226(c), mandatory detention provision); *Oyelude v. Chertoff*, 125 Fed. App'x 543, 546 (5th Cir.2005)[4]; *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (concluding that § 2241 *habeas corpus* proceedings remain available as a forum for statutory and constitutional challenges to post-removal order detention); *Ly v. Hansen*, 351 F.3d 263 (6th Cir.2003) (holding courts can conduct *habeas* review of § 1226 detentions).

At the time this petition was filed, the undersigned was concerned that petitioner was being impermissibly held without bond pursuant to the mandatory detention provision of INA § 236(c) [8 U.S.C. § 1226(c)] because petitioner had been released from custody for the criminal conduct forming the basis for petitioner's deportation in 1993

---

[4]In *Oyelude*, the Fifth Circuit noted that while "[s]ection 1226(e) may strip us of jurisdiction to review judgments designed as discretionary under the pertinent language of the statute, . . .  it does not deprive us of all authority to review statutory and constitutional challenges." *Oyelude*, 125 Fed. Appx. 543, at 546. The Court then held that it "retain[ed] jurisdiction to review Oyelude's detention [during pendency of his removal proceedings] insofar as that detention present[ed] constitutional issues, such as those raised in a *habeas* petition." *Id.*

before the current mandatory detention provision became effective.  However, given the

above procedural history, it is clear that petitioner is currently subject to the mandatory

detention provision of INA § 236(c) [8 U.S.C. § 1226(c)].  Petitioner has now been

ordered deported on the basis of his 1998 federal criminal conviction, an offense which

constitutes an aggravated felony, for which he was released from criminal custody in

November, 2005.  Accordingly, the mandatory detention provision applies to petitioner.

*See* IIRIRA § 303(b)(2) (§ 236 is applicable to individuals released after the October 9,

1998 expiration of the Transition Period Custody Rules); *Velasquez v. Reno*, 37

F.Supp.2d 663, 670-71 (D.N.J. 1999); *Ijemba v. Attorney General,* 2007 WL 2908820,

*2, 2:07-CV-1091 (W.D. La. 2007).[5]

　　　While petitioner argues that he is not subject to § 1226(c) detention because he has

been ordered deported under former § 241(a)(2)(A)(iii), that argument is without merit.

Former section 241 (8 U.S.C. § 1251) was merely re-designated as § 237 (8 U.S.C. §

1227). *See* IIRIRA § 305(a)(2).  Under section 236(c)(1)(B), the Attorney General must

take in to custody any alien who "is deportable by reason of having committed *any*

---

[5]*See also Irabor v. Gonzalez,* 2006 WL 306320, *3 (W.D.La. 2006); *Saucedo-Tellez v. Perryman*, 55
F.Supp.2d 882, 885 (N.D.Ill. 1999); *In re:Albert Samuilvich Feldman,* 2007 WL 1794184 (BIA 6-4-07) *citing In re:
Neville George West,* 22 I&N Dec. 1405, 2000 WL 1612317 (BIA 2000) and *In re: Adewunmi Adeniji,* 22 I&N Dec.
11002, 1999 WL 1100900 (BIA 1999); *In Re: Victor Leonardo Rojas,* 23 I&N Dec. 117, 2001 WL 537957 (BIA
2001); *Alwaday v. Beebe,* 43 F.Supp.2d 1130, 1133 (D.Or. 1999) ("Congress provided that the provisions of such
section 236(c) shall apply to individuals released after the TPCRs expire.  IIRIRA § 303(b)(2).  The TPCRs expired
October 9, 1998, so § 236(c) applies only to aliens released from incarceration after that date."); *Vang v. Ashcroft,*
149 F.Supp.2d 1027 (N.D.Ill. 2001) (concluding that § 236(c) did not apply to an alien released from criminal
custody in May 1998 five months before § 1226(c) took effect); *Cox v. Monica,* 2007 WL 1804335, *5 (M.D.Pa.
2007) (criminal conduct which does not form the basis for subjecting the petitioner to removal does not affect the
non-applicability of the mandatory detention provision to those released from criminal custody prior to the expiration
of the transition rules on the charges which form the basis for removal); *Thomas v. Hogan*, 2008 WL 4793739, *4
(M.D.Pa. 2008) (same).

*offense covered*" in section 1227(a)(2)(A)(iii), which designates any criminal offense

which constitutes an aggravated felony as a deportable offense.  The section does not

require the alien to be charged under section 1227 as petitioner suggests; the section

merely requires that the offense be "covered" by the section.  An aggravated felony

includes "illicit trafficking in a controlled substance (as defined in section 802 of Title

21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." 8

U.S.C. § 1101(43)(B).  Furthermore, contrary to petitioner's argument, the term applies to

an offense "regardless of whether the conviction was entered before, on, or after

September 30, 1996."  8 U.S.C. § 1101(43). Clearly, petitioner's 1998 federal conviction

for conspiracy to possess with intent to distribute cocaine is an aggravated felony, and, as

such, is an offense covered in § 1227(a)(2)(A)(iii).

For these reasons, petitioner is not currently eligible for release on bond under the

applicable statutory scheme.

Moreover, under the circumstances presented in this case, the undersigned

concludes that petitioner's current detention is constitutional.  The United States Supreme

Court has upheld the constitutionality of the mandatory detention provision set forth in

§ 236(c), recognizing that detention during deportation proceedings is a constitutionally

valid aspect of the removal process.  *Demore v. Kim*, 538 U.S. 510, 523, 123 S.Ct. 1708,

155 L.Ed.2d 724 (2003). Petitioner has only recently been ordered deported to Jamaica

based on his 1998 federal criminal conviction, and on October 13, 2009 that order became

administratively final when the BIA dismissed petitioner's appeal.

Moreover, while courts have found that pre-final order detention for lengthy periods of time may be found unconstitutional, the undersigned concludes that under the facts presented in this case, petitioner's detention does not reach that constitutional threshold.

The undersigned has found no Fifth Circuit authority on point.[6]  However, in *Ly v Hansen*, the Sixth Circuit held that the government, "may detain *prima facie* removable criminal aliens, without bond, for a reasonable period of time required to initiate and conclude removal proceedings promptly." *Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2003).  The court further held that the reasonableness of the length of this detention is subject to review by federal courts in *habeas* proceedings, and that "[w]hen actual removal is not reasonably foreseeable, deportable aliens may not be indefinitely detained without a government showing of a 'strong special justification,' constituting more than a threat to the community, that overbalances the alien's liberty interest." *Id*. In this regard, the court determined "that incarceration for one and one-half years as part of a civil, non-punitive proceeding when there was no chance of actual, final removal, was unreasonable." *Id*. at 271. In such situations, "courts must examine the facts of each case

---

[6]The undersigned has found one unreported Fifth Circuit decision which affirmed a district court's decision that detention for "over one year" under § 1226(c) without bond is permissible under *Kim*.  *Adiemereonwu v. Ashcroft*, 2006 WL 42035, 161 Fed.Appx. 422 (5th Cir. 2006) (*per curiam*), aff'g No. 1:04-CV-210-C, 2004 WL 2996908 (N.D.Tex. 2004). However, the court did not provide any guidance on the rationale underlying the decision.
   The only other Fifth Circuit case found by the undersigned involved an erroneous determination by the district court that the petitioner was being detained as a criminal alien under § 1226(c), when, in fact, the petitioner was in removal proceedings as an overstay. Hence, the district court's decision was vacated and the case remanded for further consideration.  *Oyelude v. Chertoff*, 125 Fed.Appx. 543, 2005 WL 564766 (5th Cir. 2005).

to determine whether there has been unreasonable delay in concluding removal proceedings." *Id.*  In making this determination, the *Ly* court looked to the actual removability of the criminal alien, and the relative responsibilities of the parties for any delays in the proceedings. *Id.* at 271-272.

Although petitioner has been in ICE custody for over four years, under the facts presented in this case, and considering the present procedural posture of petitioner's deportation proceeding, the undersigned does not find petitioner's pre-deportation detention unreasonable. Petitioner had already been ordered deported in 1993, and would have probably been deported within a short time after the BIA's December 12, 1995 remand, had petitioner not committed a federal criminal offense while out on bond awaiting a final deportation decision.  From the record before this court, it appears that the immigration judge admitted documents in support of his decision finding petitioner deportable as charged, which, as a result of a  ten year delay in the proceedings while petitioner was being federally prosecuted and serving his federal criminal sentence, were apparently lost.

The New York state court convictions which subjected petitioner to deportation in the first instance remain valid, and any defect in the quality of the evidence submitted in support of the charges against petitioner could easily have been corrected had there not been a ten year delay in the deportation proceedings, which was precipitated solely by the criminal conduct of petitioner.  Moreover, during this lengthy delay, it appears that the

14

immigration judge who originally ordered petitioner's deportation passed away, making it virtually impossible to reconstruct the prior proceedings.

Furthermore, petitioner was in federal custody when the immigration judge issued the petitioner's second order of deportation on August 12, 2005; he was not transferred to ICE custody until November 9, 2005.  Thus, the department acted promptly and did not delay the reopening of petitioner's case, in order to obtain a valid deportation order against petitioner.  At that time, however, petitioner had commenced appellate process with the BIA, and he remained in custody for over two years and two months until the BIA rendered its final January 31, 2008 decision on petitioner's numerous post-appellate motions, all of which were decided adversely to petitioner.

Petitioner also sought review in both the Second and Fifth Circuits, and obtained a stay of his deportation from the Second Circuit, a court of improper venue, while his case was transferred to the Fifth Circuit.  The Fifth Circuit ultimately remanded his case back to the BIA in May 2008, not on the merits of petitioner's claims, but rather on motion of the department.  The BIA, in turn, remanded the case to the immigration court to permit the lodging of an additional charge against petitioner.  Petitioner delayed that process by seeking reconsideration of the BIA's decision and *habeas* review in this court, as well as moving for injunctive relief seeking to prevent to department from lodging an additional charge against him.

15

Since then, the department has lodged an additional ground for petitioner's deportation based on his federal criminal conviction, an action which both the BIA and this court has found was proper.  Petitioner has also received merits consideration in February 2009 of his pre-hearing motion to terminate, further delaying the finality of his deportation proceedings, and another merits hearing on his deportability in June 2009, which petitioner once again appealed to the BIA, further prolonging his detention pending issuance of a final deportation order.

After the BIA's dismissal of petitioner's appeal on October 13, 2009, petitioner's administrative order of deportation would have become final, thus, terminating petitioner's detention pursuant to § 1226(c), and subjecting petitioner to detention under § 1231(a)(1)(B)(i) and the corresponding statutory 90 day removal period and the jurisprudential six month removal period.  *See Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  However, petitioner sought review in the Ninth Circuit Court of Appeal, a court he openly acknowledged under oath was a court of improper venue.  Upon filing, the Ninth Circuit issued a temporary stay of deportation, not on the merits of petitioner's claims, but rather pursuant to a standing general order of that court.[7]  As a result of the issuance of that automatic temporary stay, petitioner's detention continued to be governed under § 1226.  *See* 8 U.S.C. § 1231 (a)(1)(B)(ii); *Alafyouny v. Chertoff*, 2006 WL 1581959, *10-11(N.D.Tex. 2006) (and cases cited

_____

[7]It is clear to the undersigned that petitioner is well aware of the Standing Order of the Ninth Circuit.

16

therein[8]); *Semedo v. Mukasey*, 2008 WL 5483028 (W.D.La. 2008); *Prieto-Romero v.*

*Clark*, 534 F.3d 1053, 1058-1062 (9th Cir. 2008); *Andrade v. Gonzales*, 459 F.3d 538, 543

(5th Cir.2006) (explaining that "§ 1231(a)(1)(B)(ii) only applies to those cases in which

[the court of appeals] also issued a stay of removal").  Thus, by improperly filing for

review in the Ninth Circuit and obtaining that court's automatic temporary stay of

deportation, petitioner further prolonged his § 1226 detention and further delayed his

ultimate deportation from this country.

Petitioner has now further prolonged his current complained of § 1226(c) detention

and his ultimate deportation from this country by, immediately after the Fifth Circuit

denied his Motion for Stay of deportation, *again* filing for review in the Ninth Circuit, a

court he has openly acknowledged is a court of improper venue, which court has again

issued a temporary stay of deportation pursuant to its standing general orders.

Given that petitioner has acknowledged, under oath, that the Ninth Circuit is a

court of improper venue, and further given that he has twice been told by the Second

---

[8]*Wang v. Ashcroft* 320 F.3d 130, 147 (2nd Cir. 2003) (stating that "[t]he determination of when an alien becomes subject to detention under [§ 1231(a) ] rather than [§ 1226] is governed by [§ 1231(a)(1) ]" and noting in *dicta* that when § 1231(a)(1)(B)(ii) applies, the alien continues to be detained under § 1226), *Martinez-Jaramillo v. Thompson*, 120 Fed. App'x 714, 717 (9th Cir.2005) (holding that when § 1231(a)(1)(B)(ii) applies § 1226 provides the statutory basis for detention), *Kothandaraghipathy v. Department of Homeland Sec*., 396 F.Supp.2d 1104, 1107 (D.Ariz.2005) (holding that "detention is pursuant to the pre-removal order detention statute, 8 U.S.C. § 1226, rather than the post-removal order detention statute, 8 U.S.C. § 1231" when § 1231(a)(1)(B)(ii) applies to delay commencement of the removal period), *Quezada-Bucio v. Ridge*, 317 F.Supp.2d 1221, 1224 (W.D.Wash.2004) (holding that "[b]ecause Petitioner's removal order has been stayed by the Ninth Circuit pending its review of the BIA decision, the 'removal period' has not yet commenced, and Petitioner therefore is detained pursuant to INA § 236"), *Milbin v. Ashcroft*, 293 F.Supp.2d 158, 161 (D.Conn.2003) (holding, without specific discussion of § 1231(a)(1)(B)(ii), that petitioner "continues to be subject to mandatory detention under § 236(c)" despite an administratively final order of removal because of an existing stay), *Clavis v. Ashcroft*, 281 F.Supp.2d 490, 493 (E.D.N.Y.2003) (same) and *Morena v. Gonzales*, No. 4:CV-05-089, 2005 WL 3277995, at *4 n. 2 (M.D.Pa. Dec.2, 2005) (same).

Circuit that the Fifth Circuit is the proper court to review his deportation proceeding, it is clear the filing was made for the sole purpose of obtaining another temporary stay, to further prolong his § 1226 detention.

Moreover, the undersigned notes that although petitioner advised this court at the November 3, 2009 hearing that he would withdraw his first petition which was improperly filed in the Ninth Circuit, given that petitioner faxed correspondence to that court *on the very day of the hearing* advising the Ninth Circuit of his intention not to withdraw his petition, it is clear that this action was also taken for the sole purpose of continuing that court's temporary stay, to further prolong the finality of his deportation proceeding.

 Petitioner is not entitled to relief simply because of the length of the delay in obtaining a final order of deportation.  The delay must be unreasonable.  Based on the record before this court, it does not appear that the delay was unnecessarily delayed by the department.  To the contrary, the majority of the delay in this case was a direct result of petitioner's actions.  It appears to the court that petitioner has extended his detention by filing meritless appeals and motions challenging his deportability, as well as petitions for review in appellate courts which he knew were courts of improper venue (both the Second and Ninth Circuits) to receive temporary stays of deportation and the benefit of court rules which are advantageous to him.  Appeals and petitions for relief are to be expected as a natural part of the removal process. *See Ly*, 351 F.3d at 272. Under the

18

circumstances of this case, however, the court views petitioner's appeals and motions as essentially dilatory tactics to prolong his detention and delay his deportation proceeding. As the court observed in *Ly*:

> Under the rule we adopt today, courts must be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration. Without consideration of the role of the alien in the delay, we would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay "unreasonable" and order their release.

*Id.*

In light of the above, it appears to this court that this is exactly what petitioner has done in this case.  He has engaged in dilatory tactics to prolong his current detention and put off the final day of deportation, so that he can argue to this court that he must be released because of the length of his detention.  It further appears to this court that petitioner has "strung out" the proceedings, in the hopes that this federal court will find the delay "unreasonable" and order his release.

Furthermore, it is obvious to this court that petitioner has been "gaming" the system.  He has twice filed petitions in the Second Circuit Court of Appeals and twice filed in the Ninth Circuit Court of Appeals, knowing that he would receive an automatic stay of deportation.  Furthermore, petitioner attempted to deceive this court, suggesting while under oath, that he was not involved in the first admittedly improper filing in the Ninth Circuit, and then immediately following the hearing, taking affirmative steps to

19

maintain his petition, in contravention to his statements to, and sworn testimony before, this court.  Had an attorney engaged in such conduct, the undersigned would have recommended sanctions, including disbarment from practicing law in this court.  This court, therefore, will clearly not reward petitioner's dilatory tactics, nor his obstructive and deceitful behavior.

While it is true that as a result of petitioner's review process, petitioner's case was ultimately remanded to the BIA in May 2008 and from the BIA to the immigration court in October and December 2008, petitioner did not prevail at his most recent hearing before the immigration judge or on his last appeal to the BIA.  In addition, there is no evidence before this court indicating that petitioner is not, in fact, deportable as originally charged, as a result of his New York state court convictions, or as supplementally charged, as a result of his federal controlled substance conviction.  Furthermore, it appears to this court that petitioner's pending properly filed Petition for Review in the Fifth Circuit has little likelihood of success.[9]

Moreover, unlike *Ly*, which involved a Vietnamese citizen who could not be removed to his native country, there is no evidence that the government is prevented from deporting petitioner to Jamaica, a country which regularly and routinely receives its

---

[9]At the evidentiary hearing, petitioner asserted that in the Fifth Circuit he plans to challenge the fact that he is being deported as an arsonist, the department's authority to file an additional charge against him based on his federal criminal conviction following remand, and whether the department was barred from filing the additional charge based on principles of *res judicata*.  There is no evidence that petitioner's deportation was based on any arson conviction.  Both this court and the BIA have found that the filing of the additional charge was proper and, as found by the BIA, there is no basis for a claim of *res judicata* given that there has been no final order issued in this case.

deported and removed citizens.[10]  *See also Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (rejecting a petitioner's challenge to his three year § 1226 detention because "repatriations to Prieto-Romero's country of origin, Mexico, are routine and that the government stands ready to remove Prieto-Romero as soon as judicial review is complete.").

Indeed, during the evidentiary hearing, the parties agreed that Petitioner's case is also unlike those considered by the Supreme Court in *Zadvydas* because it is not disputed that petitioner is a citizen of Jamaica, and there is a repatriation agreement existing between Jamaica and the United States.[11]  *Id.* at 684-686 (discussing facts of the cases considered in *Zadvydas*).  Indeed, during the evidentiary hearing, the parties agreed that there is no impediment to the deportation or removal of Jamaican citizens' like petitioner. Thus, it does not appear that actual deportation is not reasonably foreseeable, as was the case in *Ly* and *Zadvydas*, but rather that petitioner's actual, final deportation will be effected as soon as the Fifth Circuit rules on petitioner's pending properly filed Petition for Review.

---

[10]*See Ricketts v. Mule*, 2009 WL 102953, *5  (W.D. N.Y. 2009) (noting that "Jamaica regularly issues documents for the repatriation of its nationals . . . [and that A]ccording to statistical reports, [the department] successfully removed 1,364 aliens to Jamaica in Fiscal Year 2006."(internal citations excluded)); *Washington v. Ashcroft*, 2006 WL 314527, *2 (D. N.J. 2006) (noting that Jamaica has a repatriation agreement with the United States); *McKenzie v. INS*, 2005 WL 452371, *4 (E.D. Pa. 2005) (same); *Dunbar v. Holmes*, 2000 WL 1751074, *3 (E.D. Pa. 2000) (noting that "Petitioner's native country of Jamaica has historically accepted repatriation of criminal aliens.").

[11]*See supra*. at fn. 9.

For this same reason,  petitioner's current detention, like the detainee considered by the Supreme Court in *Kim*, has an "obvious termination point," and unlike the detentions considered by the Court in *Zadvydas*, is not "potentially permanent".  *Kim*, 538 U.S. at 528-529.  Furthermore, as noted by the Ninth Circuit in *Prieto-Romero*, the fact that petitioner's current detention lacks a certain end date does not render his detention "indefinite" in the sense that the Supreme Court found constitutionally problematic in *Zadvydas,* given that there is no question of petitioner's citizenship and no lack of a repatriation agreement with Jamaica; petitioner "remains capable of being [deported]-even if it has not yet finally been determined that he should be [deported] . . . . *Prieto-Romero*, 534 F.3d at 1065; *see also Castellanos v. Holder*, 2009 WL 2138408, *4-5 (3rd Cir. 2009).

Finally, as observed by the Seventh Circuit in *Hussain v. Mukasey*, 510 F.3d 739, 742 (7th Cir. 2007), "even if the delay was unconscionable, was not procured in whole or part by [petitioner] himself, and was of such a length as to infringe his rights because he was denied release throughout the protracted proceeding, it would not do to order his release now, when the [deportation] proceedings are in their final stage."  *Hussain*, 510 F.3d at 742.  But because petitioner, like the petitioner in *Hussain*, did not file his application for *habeas corpus* until the completion of the deportation proceeding was within sight, the only appropriate relief would be "to condition his continued detention on a prompt resolution of the [deportation] proceeding-and that relief was not sought."  *Id.*

By delaying to seek *habeas corpus* relief, petitioner, like the petitioner in *Hussain*, "allowed his case for release pending the completion of the proceeding to become moot." *Id.*  When petitioner's deportation order becomes final via the issuance of a decision by the Fifth Circuit, assuming petitioner's second improperly filed petition in the Ninth Circuit is again transferred to the Fifth Circuit and the accompanying temporary stay of deportation is again dissolved by that court, the protection provided by *Zadvydas* against indefinite detention will begin.  *See Id.*  But that is for the future.  For the present, the issue is *habeas corpus* relief pending entry of a final order of deportation,  and for the reasons set forth above, that relief must be denied at this time.

For these reasons, the court concludes that petitioner has failed to present a basis for *habeas* relief with respect to his pre-final deportation order detention.  In light of the above;  **IT IS RECOMMENDED** that this petition be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame**

authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either

the factual findings or the legal conclusions accepted by the District Court, except

upon grounds of plain error. See *Douglas v. United Services Automobile Association,*

*79 F.3d 1415 (5th Cir. 1996).*

THUS DONE AND SIGNED in Chambers at Lafayette, Louisiana, January 14,

2010.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

24